UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE PEOPLE OF THE STATE OF MICHIGAN, <br><br> Plaintiff, <br><br> v. <br><br> BP P.L.C., *et al.*, <br><br> Defendants. | Case No. 1:26-cv-254 <br><br> Hon. Jane M. Beckering <br> Magistrate Judge Ray Kent <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
<u>AMERICAN PETROLEUM INSTITUTE'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

LEGAL STANDARD ..........................................................................................................3

ARGUMENT.........................................................................................................................3

    I.   The Complaint Fails to Allege API Joined any Agreement to Suppress
        Output or Innovation of Clean Energy ....................................................................4

    II.  The Conduct by API That the Complaint Challenges Is Legitimate and
        Pro-Competitive Trade Association Activity ........................................................10

    III. API's Petitioning Activity Is Immune from Antitrust Liability under the
        *Noerr-Pennington* Doctrine .................................................................................12

CONCLUSION...................................................................................................................14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988)........................................................................................ 13, 14

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
323 F.3d 366 (6th Cir. 2003) ................................................................................ 4

*Am. Spirit & Cheer Essentials, Inc. v. Varsity Brands, LLC*,
2022 WL 22895737 (W.D. Tenn. Mar. 30, 2022) ................................................ 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................... 3, 8

*In re Auto. Parts Antitrust Litig.*,
2018 WL 2181100 (E.D. Mich. Jan. 31, 2018) ................................................ 5, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................. 3

*In re California Bail Bond Antitrust Litigation*,
511 F. Supp. 3d 1031 (N.D. Cal. 2021) ........................................................... 6, 7

*Christian Mem'l Cultural Ctr., Inc. v. Mich. Funeral Dirs. Ass'n*,
998 F. Supp. 772 (E.D. Mich. 1998) .................................................................. 14

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) ............................................................................ 11

*E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)............................................................................................ 14

*Geomatrix, LLC v. NSF Int'l*,
629 F. Supp. 3d 691 (E.D. Mich. 2022) ........................................................ 12, 14

*Geomatrix, LLC v. NSF Int'l*,
82 F.4th 466 (6th Cir. 2023) ............................................................................... 12

*In re High Fructose Corn Syrup Antitrust Litig.*,
295 F.3d 651 (7th Cir. 2002) ................................................................................ 8

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*,
535 F. Supp. 3d 638 (E.D. Mich. 2021) ............................................................... 4

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for*
*Athletic Equip.*,
48 F.4th 656 (6th Cir. 2022) ................................................................... 9, 10

*Hyland v. HomeServs. of Am., Inc.*,
771 F.3d 310 (6th Cir. 2014) ...................................................................... 8

*Kitchens v. Nat'l Bd. of Med. Examiners*,
2025 WL 318102 (E.D. Ky. Jan. 28, 2025) .............................................. 12

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*,
922 F.3d 713 (6th Cir. 2019) .................................................................... 10

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984)................................................................................ 5, 7

*Northstar Energy LLC v. Encana Corp.*,
2014 WL 5343423 (W.D. Mich. Mar. 10, 2014)........................................ 5

*In re Passenger Vehicle Replacement Tires Antitrust Litig.*,
767 F. Supp. 3d 681 (N.D. Ohio 2025) ................................................. 8, 11

*In re Polyurethane Foam Antitrust Litig.*,
799 F. Supp. 2d 777 (N.D. Ohio 2011) ...................................................... 7

*Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*,
2013 WL 3992523 (W.D. Tenn. Aug. 5, 2013)........................................ 10

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
709 F. Supp. 3d 552 (M.D. Tenn. 2023)........................................... 5, 9, 10

*Schachar v. Am. Acad. of Ophthalmology, Inc.*,
870 F.2d 397 (7th Cir. 1989) .................................................................... 14

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) .................................................................... 11

*In re Travel Agent Comm'n Antitrust Litig.*,
583 F.3d 896 (6th Cir. 2009) ......................................................... 4, 7, 8, 11

*Washington Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
328 F. Supp. 3d 824 (N.D. Ill. 2018)........................................................ 11

*Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*,
648 F.3d 452 (6th Cir. 2011) ...................................................................... 7

**Federal Statutes**

Sherman Antitrust Act, 15 U.S.C. § 1 ...............................................*passim*

**State Statutes**

Michigan Antitrust Reform Act, Mich. Comp. Laws § 445.784(2) ................................... 4

**INTRODUCTION**

Plaintiff's novel theory stretches the antitrust laws past the breaking point. It asks this Court to extend the Sherman Act to make Defendant American Petroleum Institute ("API")—a nonprofit trade association that neither produces nor sells energy products—jointly and severally liable for a supposed conspiracy among Exxon, Chevron, BP, and Shell ("Producer Defendants") to suppress the output and innovation of alternative energy sources. But Plaintiff has not shown that API joined the alleged agreement. The Complaint does not allege that API participated in any conspiracy; it merely asserts that API provided a forum for others to advance a scheme. Nor does the Complaint allege any facts showing that API's legitimate efforts to promote the petroleum industry were the product of an anticompetitive agreement with the Producer Defendants, as opposed to just unilateral conduct.

What is more, the API conduct that Plaintiff challenges is incapable of supporting antitrust liability anyway. Most, if not all, of Plaintiff's allegations about API attack alleged efforts to promote the petroleum industry by increasing demand for oil and gas products and by advocating policy positions consistent with that aim. This is standard trade association activity, which courts widely recognize as not merely legitimate but procompetitive. Stated plainly, Plaintiff has not alleged that API did anything anticompetitive. Furthermore, the API conduct alleged consists largely of public outreach campaigns aimed at influencing public opinion and energy policy. It is well settled that such activities are protected by the First Amendment and immune from antitrust liability. For all these reasons, as well as those set out in the Defendants' joint motion, the Court should dismiss all claims against API.

**BACKGROUND**

API is a nonprofit corporation that serves as the national trade association for the petroleum industry. Compl. ¶ 26. It does not produce or sell energy products, and it does not

1

design or manufacture energy technologies. Instead, it promotes and supports the companies that do, companies like the Producer Defendants, each of whom is a member of API. *Id.* As a trade association, Plaintiff alleges, "API's purpose is to advance its members' collective business interests, which include increasing consumer consumption of fossil fuels for the financial profit of API's members." *Id.* Other functions served by API in support of the industry include "gather[ing] information of interest to the industry" and "disseminat[ing] that information to its members." *Id.*

Plaintiff does not allege that API agreed to suppress the output and innovation of clean energy. Nor could it, because API neither produces nor sells energy products. Rather, Plaintiff claims API served as a "central forum" for the Producer Defendants to form their supposed conspiracy, using API as the "infrastructure to advance their conspiracy." *Id.* ¶ 62. Plaintiff claims, for instance, that the Producer Defendants attended meetings hosted by API and participated in the organization's committees and leadership positions in order to collude with one another. *Id.* ¶¶ 62–65, 72–76, 84, 199, 226.

Consistent with its purpose as a trade association representing the petroleum industry, API has also engaged in public advocacy to promote fossil fuels. *Id.* ¶¶ 152, 158, 167, 176, 187, 202. In Plaintiff's view, some of these advocacy campaigns were "deceptive." *Id.* ¶¶ 152, 158–60, 165, 176, 202. In addition to improving public perception of fossil fuels generally, these public outreach efforts were aimed at influencing public support for government policies related to energy. *E.g.*, *id.* ¶¶ 167, 218 (messaging aimed at decreasing support for "EV subsidies" and other "policies promoting EV adoption"), ¶ 202 (funding studies "show[ing] a cost to [climate] policy"), ¶ 189 (alleging partnerships with research institutions generates research "supportive of fossil-fuel-friendly . . . policies"); *see also id.* ¶ 5 (discussing Defendants' "effort to influence

2

consumer preferences and public discourse about energy products and the climate crisis"). Plaintiff also claims that Defendants lobbied the government directly to oppose certain energy policies and used "aggressive" patent litigation to hinder rival energy producers' development of clean energy technology. *Id.* ¶¶ 3, 5, 218.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court accepts as true the well-pleaded factual allegations for purposes of a motion to dismiss, but that tenet "is inapplicable to legal conclusions." *Id.* The Court next "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

## ARGUMENT

API joins Defendants' omnibus motion to dismiss in full but writes separately to underscore particular deficiencies as to API, the lone Defendant that neither produces nor sells energy.

To establish a violation of Section 1 of the Sherman Act (or of the Michigan Antitrust Reform Act ("MARA")),[1] Plaintiff must allege facts to plausibly show: "(1) an agreement, which may be in the form of a contract, combination, or conspiracy; (2) affecting interstate commerce; (3) that imposes an unreasonable restraint of trade." *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 535 F. Supp. 3d 638, 644 (E.D. Mich. 2021), *aff'd*, 48 F.4th 656 (6th Cir. 2022).

Plaintiff cannot satisfy the first or third elements. The Complaint fails to allege that API joined the purported conspiracy to suppress output or innovation of alternative energy sources, and the trade association activity by API challenged in the Complaint is well-recognized legitimate and procompetitive conduct. In addition, much of the conduct by API alleged in the Complaint amounts to petitioning activity, which is protected under the First Amendment and immune from antitrust liability.

## I. The Complaint Fails to Allege API Joined any Agreement to Suppress Output or Innovation of Clean Energy

The foundational element of an antitrust conspiracy is the existence of an anticompetitive *agreement*, joined by each defendant. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) ("Because § 1 of the Sherman Act does not prohibit [all] unreasonable restraints of trade . . . but only restraints effected by a contract, combination, or conspiracy, . . . [t]he crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." (internal citations and quotation

---

[1] API's arguments apply equally to Plaintiff's claim under MARA, which mirrors the Sherman Act. *See Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 368 n.1 (6th Cir. 2003) ("Because the Michigan Anti-Trust statute and the Sherman Anti-Trust Act mirror each other, [the court] appl[ies] the same analysis to both the federal and state anti-trust claims."); Mich. Comp. Laws § 445.784(2) ("in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes").

marks omitted)). For two separate reasons, Plaintiff cannot satisfy this element with respect to API.

*First*, Plaintiff fails to allege that API participated in the conspiracy at the heart of the Complaint: namely, an agreement to suppress output or innovation of alternative energy sources. *See In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)* ("*RealPage*"), 709 F. Supp. 3d 552, 555 (M.D. Tenn. 2023) ("A plaintiff must specifically allege each defendant's participation in the conspiracy."). To show an individual defendant's involvement in a conspiracy, Plaintiff must allege that the specific defendant made "'a *conscious commitment* to a *common scheme* designed to achieve an unlawful objective.'" *Northstar Energy LLC v. Encana Corp.*, 2014 WL 5343423, at \*13 (W.D. Mich. Mar. 10, 2014) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)) (emphases added).

Here, the Complaint does no such thing. To begin, API is a trade association, not an energy producer, and Plaintiff fails to bridge the substantial gap between vague "advocacy" efforts and actual decisions to restrict the output or innovation of energy products API doesn't design, sell, or price. It is implausible to suggest that API *agreed* to do something it is, by its nature, incapable of doing. At most, Plaintiff has alleged that API served as a "forum" for the Producer Defendants to "align strategies, share information, and act collectively," and that the Producer Defendants used API to "advance their conspiracy." Compl. ¶¶ 62, 238. But the Complaint's scattered allegations that the Producer Defendants used API to "advance" their putative agreement, or that API engaged in efforts to promote the petroleum industry generally, are insufficient to show API's participation in the alleged conspiracy. After all, "a defendant joins a conspiracy by *joining an agreement, not a group*." *In re Auto. Parts Antitrust Litig.*, 2018 WL 2181100, at \*3 (E.D. Mich. Jan. 31, 2018) (emphasis added); *see also Am. Spirit &*

*Cheer Essentials, Inc. v. Varsity Brands, LLC*, 2022 WL 22895737, at \*25–26 (W.D. Tenn. Mar. 30, 2022) (holding the plaintiffs "fail[ed] to adequately allege [an individual defendant's] independent involvement in illegal agreements or an antitrust conspiracy" where the plaintiffs did "not allege [that defendant] was directly party to an agreement," notwithstanding allegations that his conduct "advanced [another defendant's] agreements" that the plaintiffs challenged).

The court's decision in *In re California Bail Bond Antitrust Litigation*, 511 F. Supp. 3d 1031 (N.D. Cal. 2021), is instructive. There, the plaintiffs alleged that defendant surety companies had conspired to submit uniform premium rates for their bail bonds. *Id.* at 1042. The complaint also named as defendants three trade associations, who allegedly "host[ed] meetings that provide[d] opportunities for sureties and bail agents to collude, . . . ma[de] statements calculated to mislead consumers[,] . . . and maintain[ed] information" that the sureties could use to enforce the conspiracy. *Id.* at 1043 (internal quotation marks omitted). The court held that such allegations "go to maintenance" of the conspiracy but did not show that the trade association defendants "ever agreed to join the conspiracy." *Id.* In addition, the court held, the plaintiffs failed to show that bail agencies "participated in [the alleged] agreement to submit uniform premium rates to CDI given that . . . sureties—not bail agencies—are responsible for submitting proposed rates." *Id.* at 1042 n.3. Accordingly, the court dismissed both the trade associations and the bail agencies from the case. *Id.* at 1043.

So too here. Plaintiff has alleged only that API served as the forum for the Producer Defendants to meet (and allegedly collude), advancing (allegedly misleading) publicity campaigns in support of the petroleum industry, and gathering market information for the benefit of the Producer Defendants. *Compare id.*, *with* Compl. ¶¶ 26, 62–65, 72–76, 84, 152, 158–60, 165, 167, 176, 187, 199, 202, 226. At best, such conduct could have helped *maintain* an alleged

conspiracy among the Producer Defendants, but it is insufficient to show that API *joined* or participated in any agreement. *In re California Bail Bond Antitrust Litig.*, 511 F. Supp. 3d at 1043. And like the bail agencies in *California Bail Bond*, API does not produce or sell the products Plaintiff claims were restrained by the alleged conspiracy (i.e., energy), and thus "it is not clear how [API] could have participated in an agreement" to restrict output or innovation of those products. *Id.* at 1042 n.3.

In short, even if Plaintiff had alleged a conspiracy by the Producer Defendants to suppress output and innovation of alternative energy sources—it has not—the facts alleged fall far short of showing API's participation. Plaintiff's antitrust claims against API should thus be dismissed. *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 905–06 (allowing antitrust claims to proceed against some defendants but dismissing insufficiently supported claims against others); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 783 (N.D. Ohio 2011) ("Adequately alleging a conspiratorial agreement in general does not . . . indicate that a plaintiff has alleged each defendant's participation in that conspiracy.").

***Second***, even if API could theoretically join in the agreement alleged, the Complaint fails to allege facts showing that API's conduct here was the product of collusion, as opposed to independent conduct. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (to state a claim under section 1, "[t]here must be evidence that tends to exclude the possibility that the [defendants] were acting independently" (quoting *Monsanto*, 465 U.S. at 761)). "To plead unlawful agreement, a plaintiff may allege either an explicit agreement to restrain trade, or sufficient circumstantial evidence tending to exclude the possibility of independent conduct." *Id.* (internal quotation marks omitted). But "[u]nder either approach, the

7

facts alleged must plausibly suggest[ ], rather than be merely consistent with, an agreement to restrain trade in violation of the Sherman Act." *Id.* (internal quotation marks omitted).

Plaintiff has failed to allege facts sufficient to show that API acted pursuant to a collusive agreement with the Producer Defendants, rather than independently. The Complaint contains no allegations of an explicit agreement (i.e., direct evidence) between API and the Producer Defendants.[2] Instead, Plaintiff asks the Court to *infer* an agreement through circumstantial evidence. But the API conduct challenged in the Complaint is just ordinary, perfectly legitimate trade association activity. *See also* Section II, *infra*. It is the precise conduct one would **expect** API to take in the **absence** of any collusion. Where, as here, the factual allegations are equally consistent with legitimate business behavior as they are with acting pursuant to an antitrust conspiracy, the allegations do not demonstrate an agreement. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 908 (affirming dismissal where plaintiffs "failed to allege sufficient facts plausibly suggesting (not merely consistent with) an agreement . . . because defendants' conduct 'was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior'" (quoting *Iqbal*, 556 U.S. at 680)); *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F. Supp. 3d 681, 743 (N.D. Ohio 2025) ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a § 1 violation.").

Plaintiff also alleges certain "plus factors" here, supposedly to demonstrate that challenged conduct is more likely the product of collusion than of independent rational business

---

[2] To show "direct evidence of a conspiracy," a plaintiff must "advance[] evidence that is 'tantamount to an acknowledgment of guilt.'" *In re Auto. Parts Antitrust Litig.*, 2018 WL 2181100, at *2 (quoting *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002)); *see also Hyland v. HomeServs. of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014) (direct evidence is "explicit and requires no inferences to establish the proposition or conclusion being asserted").

activity. *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 665–66 (6th Cir. 2022).[3] But even if they did suggest a conspiracy (and they do not), not one of the purported "plus factors" alleged in the Complaint applies to API. *See* Compl. ¶¶ 218–46.

| Purported "plus factor" | Inapplicability to API |
| --- | --- |
| The suppression of clean energy, despite the opportunity for profits, was inconsistent with the Producer Defendants' independent economic interests. Compl. ¶¶ 218–19. | API is a trade association and does not profit from the production of energy products. Compl. ¶ 26. Even Plaintiff acknowledges that API's alleged conduct—advocating for the petroleum industry—is ***consistent with*** its independent interests. *Id.* ("API's purpose is to advance its members' collective business interests, which include increasing consumer consumption of fossil fuels for the financial profit of API's members.").[4] |
| The claimed energy markets have structural features that are conducive to collusion. Compl. ¶¶ 220–33. | The Complaint alleges that the Producer Defendants, not API, "control" the markets (Compl. ¶¶ 221, 227–28) and exploit its structural features to collude (*id.* ¶¶ 221, 226–27). |
| The Producer Defendants shared a common economic motive to conspire to protect their market share. Compl. ¶¶ 234–37. | API is a trade association, not an energy producer, and thus does not control any share of the claimed energy markets. Compl. ¶ 26; *see also id.* ¶¶ 234–35 (claiming only that the Producer Defendants had a motive to protect their market share). |
| The Producer Defendants had opportunities to collude in trade associations and other shared organizations. Compl. ¶¶ 238–46. | As a trade association, API's role is to bring together industry participants. Compl. ¶ 26. If this were a plus factor, the same would be true of *every* trade association. |

---

[3] The Sixth Circuit recognizes the following plus factors: "(1) whether the defendants' actions, if taken independently, would be contrary to their economic self-interest; (2) whether defendants have been uniform in their actions; (3) whether defendants have exchanged or have had the opportunity to exchange information relative to the alleged conspiracy; and (4) whether defendants have a common motive to conspire." *Hobart-Mayfield*, 48 F.4th at 666.

[4] Notably, "[t]he Sixth Circuit weighs the first of these plus factors—whether the defendant's actions, if independent, would be against its own economic self-interest—most heavily." *RealPage*, 709 F. Supp. 3d at 502.

With no allegations that API participated in the claimed conspiracy, and no allegations that exclude the possibility that API's conduct was unilateral, Plaintiff has not plausibly demonstrated that API joined any agreement to suppress the output and innovation of alternative energy sources.

**II.     The Conduct by API That the Complaint Challenges Is Legitimate and Pro-Competitive Trade Association Activity**

Plaintiff also fails to satisfy the third element of a Sherman Act claim because the Complaint does not allege that API engaged in anticompetitive conduct amounting to "an unreasonable restraint of trade." *Hobart-Mayfield*, 535 F. Supp. 3d at 644; *see also Rajapakse v. Baker Donelson Bearman Caldwell & Berkowitz, P.C.*, 2013 WL 3992523, at *9 (W.D. Tenn. Aug. 5, 2013) (stating the antitrust laws "concern and prohibit certain business activities of an anticompetitive nature").[5] Instead, the allegations in the Complaint regarding API reflect only typical, legitimate trade association activity in support of the petroleum industry. Even if API ***had agreed*** to take the actions alleged, in other words, there would be nothing unreasonable or unlawful about that agreement.

In particular, the vast majority of the conduct by API that Plaintiff appears to challenge consists of API's policy campaigns aimed at strengthening public perception of fossil fuels and supporting consumption of oil and gas products. Plaintiff alleges, for instance, that API violated the antitrust laws when it:

- "promote[d] the 'Exxon Position'" regarding climate science issues;

---

[5] Whether the claims in this case are analyzed under the *per se* rule or the rule of reason, Plaintiff must show API engaged in anticompetitive conduct. *See RealPage*, 709 F. Supp. 3d at 519 ("The per se standard is reserved for conduct that is 'so obviously anticompetitive that it has no plausibly procompetitive features.'" (quoting *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 718 (6th Cir. 2019))); *id.* at 521 (claims analyzed under the rule of reason must demonstrate the defendant engaged in "anticompetitive conduct" by showing the conduct "produced anticompetitive effects").

- published reports discussing disadvantages of renewable energy sources;

- authored blog posts to promote internal combustion engage vehicles over electric vehicles;

- promoted the environmentally friendly traits of energy sources derived from fossil fuels like natural gas and "blue hydrogen"; and

- sponsored presentations about the economic costs of climate policy.

*E.g.*, Compl. ¶¶ 152, 158, 167, 176, 178, 187, 202. This is just standard trade association fare. It should come as little surprise that API sought to promote the petroleum industry, as even Plaintiff acknowledges API's mandate to "advance its members' collective business interests." *Id.* ¶ 26. Not only that, but the alleged misconduct is precisely the sort of behavior that courts routinely find does not unreasonably restrain trade, but rather advances legitimate and procompetitive ends. *See, e.g.*, *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 767 F. Supp. 3d at 712 ("Trade associations serve legitimate functions, such as providing information to industry members, conducting research to further the goals of the industry, and promoting demand for products and services." (internal quotation marks omitted)); *Washington Cnty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 843 (N.D. Ill. 2018) ("[T]rade organizations are ubiquitous and serve numerous legitimate and pro-competitive purposes.").[6] Of course, Plaintiff and API's members have differing policy objectives, and Plaintiff may even consider certain of API's promotional efforts to be misleading, but this does not make them

---

[6] *See also, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 911 ("presence at such trade meetings is more likely explained by [defendants'] lawful, free-market behavior"); *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 435 (4th Cir. 2015) (standard-setting trade organizations can have "decidedly procompetitive effects by encouraging greater product interoperability generating network effects, and building incentives to innovate" (internal quotation marks omitted)); *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) ("Gathering information about pricing and competition in the industry is standard fare for trade associations. If we allowed conspiracy to be inferred from such activities alone, we would have to allow an inference of conspiracy whenever a trade association took almost any action.").

*anticompetitive*. Indeed, competing narratives about the value of certain products is the *hallmark* of the sort of hard-nosed competition that unquestionably benefits consumers.

Because the Complaint's sole focus is on these procompetitive and legitimate efforts by API to promote the petroleum industry, the Court should find that Plaintiff has fallen short of its burden to allege anticompetitive conduct and dismiss the claims against API. *See Kitchens v. Nat'l Bd. of Med. Examiners*, 2025 WL 318102, at *11 (E.D. Ky. Jan. 28, 2025) (dismissing proposed Amended Complaint because it "provides no specific examples of actions or steps taken by the defendants that are anticompetitive").

## III.    API's Petitioning Activity Is Immune from Antitrust Liability under the *Noerr-Pennington* Doctrine

Finally, most of the API conduct challenged by the Complaint is protected by API's constitutional right to petition the government and is immune from antitrust liability as a result. With the Complaint stripped of these allegations, Plaintiff's meager allegations about API fall well short of stating a viable claim. The Court should dismiss Plaintiff's claims against API for this additional reason.

The *Noerr-Pennington* doctrine, rooted in the First Amendment right to petition the government, instructs that "defendants are immune from antitrust liability for engaging in conduct aimed at influencing decision-making by the government" because "[a]ntitrust laws do not supersede the people's right to petition their government in favor of a desired monopoly." *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 477 (6th Cir. 2023). The scope of this immunity covers not only "efforts to influence legislative and executive action" but also "administrative and judicial proceedings" such as initiating lawsuits. *Geomatrix, LLC v. NSF Int'l*, 629 F. Supp. 3d 691, 704 (E.D. Mich. 2022). The doctrine also extends to "publicity campaign[s] directed at

the general public, seeking legislation or executive action." *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499–500 (1988).

To be sure, Plaintiff concedes that it would be improper to base its antitrust claims on API's petitioning activity and claims not to seek relief for such conduct.[7] But this acknowledgment rings hollow, because the allegations about API predominately center on publicity campaigns designed to influence public policy and strengthen public perception of fossil fuels. *E.g.*, Compl. ¶¶ 152, 158, 167, 176, 178, 187, 202 (alleging API "promote[d]" positions on climate science; published reports discussing disadvantages of renewable energy sources; authored blog posts supportive of internal combustion engage vehicles; advertised environmentally friendly traits of certain fossil fuels like natural gas and "blue hydrogen"; and sponsored presentations about the economic costs of specific climate policies). According to the Complaint, many of these public outreach efforts were specifically aimed at generating support for government policies related to energy. *E.g.*, *id.* ¶¶ 5, 167, 189, 202, 218. And Plaintiff further alleges that all Defendants lobbied the government directly to oppose certain energy policies and used patent litigation to hinder rival energy producers' development of clean energy technology. *Id.* ¶¶ 3, 5, 218.

Plaintiff cannot have it both ways. It cannot allege an unlawful scheme to eliminate competition, relying almost exclusively on protected conduct, while at the same time foreswearing any intention to infringe constitutional rights. Most of API's alleged conduct constitutes protected petitioning activity, squarely within the scope of *Noerr-Pennington*

---

[7] *See* Compl. ¶ 26 n.6 ("The State does not challenge API's petitioning efforts or any First Amendment-protected conduct. Rather, it is upholding and enforcing Michigan and federal law against API for API's illegal anticompetitive conduct, which has caused injuries in Michigan. More generally, nothing in this Complaint should be construed as challenging any entities' petitioning efforts or any First Amendment-protected conduct.").

immunity. Without these allegations, there is virtually nothing left, and certainly not enough to make API liable for a supposed sweeping and decades-long conspiracy. *See Allied Tube*, 486 U.S. at 499–500; *Geomatrix*, 629 F. Supp. 3d at 704. And critically, Plaintiffs' refrain (at ¶¶ 152, 158–60, 165, 176, 202) that API's campaigns were "deceptive" changes nothing. Even if this was true—it is not—it has long been the law that "a publicity campaign" involving "deception of the public, manufacture of bogus sources of reference, [and] distortion of public sources of information" does not "constitute[] a violation of the Sherman Act." *E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc*., 365 U.S. 127, 140–41 (1961). Instead, where public statements about a product market are "false or misleading or incomplete or just plain mistaken, the remedy is not antitrust litigation but more speech—the marketplace of ideas." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 400 (7th Cir. 1989).

The Court should not only make clear Plaintiff cannot challenge protected petitioning activity under the antitrust laws, but should also dismiss Plaintiff's claims against API to the extent they are based on such conduct. *See Christian Mem'l Cultural Ctr., Inc. v. Mich. Funeral Dirs. Ass'n*, 998 F. Supp. 772, 776–78 (E.D. Mich. 1998) (granting motion to dismiss as to trade association's litigation and legislative lobbying based on the *Noerr-Pennington* doctrine).

## CONCLUSION

For these reasons, Defendant American Petroleum Institute respectfully requests that the Court grant its motion to dismiss all claims against API with prejudice.

14

Dated: May 1, 2026                    Respectfully submitted,


                                      */s/ Joel S. Fauson*_____
                                      Joel S. Fauson
                                      Rhoades McKee
                                      55 Campau Ave. Nw, Ste. 300
                                      Grand Rapids, MI 49503
                                      Telephone: (616) 233-5267
                                      Facsimile: (616) 233-5269
                                      Email: Jfauson@rhoadesmckee.com

                                      Brian D. Schmalzbach
                                      McGuireWoods LLP
                                      Gateway Plaza
                                      800 E Canal St.
                                      Richmond, VA 23219-3916
                                      Telephone: (804) 775-1000
                                      Facsimile: (804) 775-1061
                                      Email: Bschmalzbach@mcguirewoods.com

                                      *Counsel for Defendant American Petroleum
                                      Institute*

15

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(b)(i)</u>

This memorandum complies with the word limit of Local Civil Rule 7.2(b), as revised by this Court's Order Regarding Word Limitations, Dkt. No. 29, because it contains 4,451 words, excluding the portions of the brief exempted from the word count under Local Civil Rule 7.2(b)(i).  The word count was generated using Microsoft Word.

*/s/ Joel S. Fauson*_____
Joel S. Fauson