# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

THE PEOPLE OF THE STATE OF
MICHIGAN,

Plaintiff,

v.

BP P.L.C., *et al.*,

Defendants.

Case No. 1:26-cv-254

Hon. Jane M. Beckering

Mag. Judge Ray Kent

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

ANDREW M. DARLINGTON
*Counsel*

U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 532-3365
E-mail: andrew.darlington2@usdoj.gov

STANLEY E. WOODWARD, JR.
*United States Associate Attorney General*

JOHN K. ADAMS
*Deputy Associate Attorney General*

G. CHARLES BELLER
DINA KALLAY
*Deputy Assistant Attorneys General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
AVI GRUNFELD
*Attorneys*

U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 765-4799
E-mail: avi.grunfeld@usdoj.gov

*Attorneys for the United States of America*

**TABLE OF CONTENTS**

INTEREST OF THE UNITED STATES ..........................................................................1

BACKGROUND ........................................................................................................3

DISCUSSION ............................................................................................................4

   I. Count I: *Illinois Brick* bars much of Michigan's damages under Section 4 of the
Clayton Act. ......................................................................................................4

   II. Count II: Michigan's artfully pleaded state-law claim for climate-change damages
is preempted. ...................................................................................................8

CONCLUSION ........................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Academy of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*,
155 F.4th 795 (6th Cir. 2025).................................................................................. 8

*Academy of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*,
164 F.4th 529 (6th Cir. 2026)............................................................................. 5, 7

*American Electric Power Co., Inc. v. Connecticut*,
564 U.S. 410 (2011) ..................................................................................... 10, 11

*Apple Inc. v. Pepper*,
587 U.S. 273 (2019)........................................................................................... 5

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
459 U.S. 519 (1983)........................................................................................... 4

*BMW of North America, Inc. v. Gore*,
517 U.S. 559 (1996)........................................................................................... 9

*City of Milwaukee v. Illinois*,
451 U.S. 304 (1981)......................................................................................... 10

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021)........................................................................... 10, 11

*Connecticut v. Sandoz, Inc.*,
No. 3:20-cv-802 (D. Conn. Feb. 12, 2026), Dkt. 1294........................................... 4, 5

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ................................................................................ 8

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)........................................................................................... 8

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025).............................................................................................. 9

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
392 U.S. 481 (1968)........................................................................................... 7

*Hawaii v. Standard Oil Co. of California*,
405 U.S. 251 (1972)..................................................................................................... 6

*Hillsborough County v. Automated Medical Laboratories, Inc.*,
471 U.S. 707 (1985)................................................................................................... 10

*Howard Hess Dental Laboratories Inc. v. Dentsply International, Inc.*,
424 F.3d 363 (3d Cir. 2005)........................................................................................ 8

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)......................................................................................... 1, 5, 6, 7

*In re Automotive Parts Antitrust Litigation*,
997 F.3d 677 (6th Cir. 2021) ...................................................................................... 7

*In re NFL Sunday Ticket Antitrust Litigation*,
933 F.3d 1136 (9th Cir. 2019) .................................................................................... 8

*Insulate SB, Inc. v. Advanced Finishing Systems, Inc.*,
797 F.3d 538 (8th Cir. 2015) ...................................................................................... 8

*Kansas v. UtiliCorp United, Inc.*,
497 U.S. 199 (1990).................................................................................................. 6, 7

*Lowell v. American Cyanamid Co.*,
177 F.3d 1228 (11th Cir. 1999) .................................................................................. 8

*Minnesota v. American Petroleum Institute*,
63 F.4th 703 (8th Cir. 2023) ..................................................................................... 11

*National Pork Producers Council v. Ross*,
598 U.S. 356 (2023)..................................................................................................... 9

*New York v. Microsoft Corp.*,
209 F. Supp. 2d 132 (D.D.C. 2002) ........................................................................... 5

*Paper Systems Inc. v. Nippon Paper Industries Co.*,
281 F.3d 629 (7th Cir. 2002) ...................................................................................... 8

*Pennsylvania v. Milk Industry Management Corp.*,
812 F. Supp. 500 (E.D. Pa. 1992) .............................................................................. 5

*Static Control Components, Inc. v. Lexmark International, Inc.*,
697 F.3d 387 (6th Cir. 2012), *aff'd*, 572 U.S. 118 (2014)....................................... 5

iii

*United Mine Workers of America v. Pennington,*
   381 U.S. 657 (1965)........................................................................................................ 8

*Young v. Masci,*
   289 U.S. 253 (1933)........................................................................................................ 9

**Constitution and Statutes**

U.S. Const. art. VI.......................................................................................................... 10

15 U.S.C. § 15............................................................................................................ 1, 4, 5

15 U.S.C. § 15c................................................................................................................ 6

15 U.S.C. § 26................................................................................................................. 4

28 U.S.C. § 517............................................................................................................... 1

42 U.S.C. § 7401...................................................................................................... 10, 11

42 U.S.C. § 7416.......................................................................................................... 11

Mich. Comp. Laws Ann. § 445.778................................................................................ 5

**Other Authorities**

Amended Complaint, *United States v. Michigan,*
   No. 1:25-cv-00496 (W.D. Mich. July 11, 2025), Dkt. 8............................................... 8, 9

Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 29, 2025).......................................... 2

Exec. Order No. 14260, 90 Fed. Reg. 15513 (Apr. 8, 2025).......................................... 2

Exec. Order No. 14261, 90 Fed. Reg. 15517 (Apr. 8, 2025).......................................... 2

**INTEREST OF THE UNITED STATES**

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which permits the Attorney General of the United States to direct any officer of the U.S. Department of Justice "to attend to the interests of the United States in any case pending in the United States."  The United States, through the Department of Justice, enforces the federal antitrust and environmental laws, and has a strong interest in their correct application.

i.  *Antitrust.*  The United States has a strong interest in promoting sound private antitrust enforcement, which is an important supplement to the government's own antitrust enforcement. At the same time, the United States has an interest in ensuring that courts respect limitations on such private antitrust enforcement announced by Congress and the courts, including the *Illinois Brick* rule (*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)), which typically bars indirect purchasers from suing for damages under Section 4 of the Clayton Act, 15 U.S.C. § 15.

Consistent with these interests, the United States has submitted several briefs as amicus curiae discussing the correct application of the *Illinois Brick* rule.  *See* Brief for the United States of America as Amicus Curiae Supporting Petitioner, *Apple, Inc. v. Pepper,* No. 17-204 (U.S. Aug. 2018), Dkt. 22; Brief for the United States of America as Amicus Curiae in Support of Appellants and Vacatur, *Marion Healthcare, LLC v. Becton Dickinson & Co.*, No. 18-3735 (7th Cir. Apr. 25, 2019), Dkt. 39; Brief for the United States and the Federal Trade Commission as Amici Curiae in Support of Neither Party, *Motorola Mobility LLC v. AU Optronics Corp.*, No. 14-8003 (7th Cir. Sept. 5, 2014), Dkt. 89.  The strong interest of the United States in the correct application of the antitrust laws applies to America's energy markets.  *See* Statement of Interest of the Federal Trade Commission and the United States, *Texas v. BlackRock, Inc.*,

No. 6:24-cv-00437-JDK (E.D. Tex. May 22, 2025), Dkt. 99.  The President has declared a national energy emergency, recognizing that "[a]n affordable and reliable domestic supply of energy is a fundamental requirement for the national and economic security of any nation." Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 29, 2025).  Fossil fuels remain vital to America's energy security and provide a reliable, cost-effective source of energy to support growing electrical demand for artificial intelligence and a resurgence in domestic manufacturing. *See* Exec. Order No. 14261, 90 Fed. Reg. 15517 (Apr. 8, 2025).

ii.  *Federal Environmental Policy and Preemption of State Laws.*  The United States, through the Environment and Natural Resources Division, also has a strong interest in monitoring or intervening in state and private environment regulation enforcement actions to ensure that constitutional principles and federal policy interests are protected.  The United States, through the Environment and Natural Resources Division, enforces federal environmental laws and regulations, in part, to ensure the U.S. Environmental Protection Agency (EPA) remains the primary enforcer of the nation's environmental laws and regulations as Congress intended.  The President has issued a number of executive orders directing American policy on this issue.  In addition to the executive orders above, President Trump signed Executive Order 14260, *Protecting American Energy from State Overreach*, and directed the Attorney General to "take all appropriate action to stop the enforcement of State laws . . . that the Attorney General determines to be illegal."  Exec. Order No. 14260, 90 Fed. Reg. 15513 (Apr. 8, 2025).  Here, Michigan's request for damages under state antitrust law stemming from "negative externalities in the form of climate change impacts," Compl. ¶ 16, is preempted by federal law.

iii.  This case is a parens patriae action by the State of Michigan (the State or Michigan), alleging that Defendants BP, Chevron, ExxonMobil, and Shell (the Fossil Fuel Defendants) and the American Petroleum Institute (API) conspired to delay the transition from fossil fuels to renewable energy.  Compl. ¶¶ 1-3.  This Statement explains that most of the fossil-fuel-based energy purchased by the State and its residents was not purchased directly from the Fossil Fuel Defendants, and thus claims for damages for any alleged overcharges on such purchases under Section 4 of the Clayton Act are barred by *Illinois Brick*.  Additionally, the field of interstate and global environmental regulation is governed by federal laws and regulation, which generally preempt state law enforcement thereof, no matter which state laws are used to regulate the field. The United States takes no position on the truth of the allegations or the ultimate disposition of the motions.

## BACKGROUND

The Complaint alleges that Defendants—four of the world's largest energy producers and the industry's largest trade association—conspired to delay the transition from fossil fuels to renewable energy in violation of federal and state antitrust law.  Compl. ¶¶ 1-3.  Specifically, Michigan alleges that this conspiracy began in 1979, when Defendant ExxonMobil shared internal studies about the effects of climate change with its competitors through a task force established by Defendant API.  Compl. ¶ 64.  Michigan alleges that the Fossil Fuel Defendants began to retreat from renewable energy investments at this time, and that each Fossil Fuel Defendant took actions over the course of nearly four decades to individually divest from renewable energy investments.  *See* Compl. ¶¶ 87-214.  For example, Michigan alleges that Defendant Chevron suppressed the adoption of an electric vehicle battery technology by

3

acquiring patents and bringing patent infringement suits to prevent companies from using the technology in electric vehicle batteries, Compl. ¶¶ 98-196, and that Defendant ExxonMobil exited the solar market in the 1980s and 1990s by selling solar-technology ventures, Compl. ¶ 126.

But the Complaint also acknowledges that the Fossil Fuel Defendants continued to invest in renewable energy technology well after the formation of the alleged conspiracy.  For instance, ExxonMobil announced that it had developed a new battery film separator technology for hybrid and electric vehicles in 2007 and announced a partnership with an electric vehicle battery supplier in 2009.  Compl. ¶ 97.  And Chevron announced investments in, and partnerships with, three different electric vehicle charging companies between 2018 and 2024.  Compl. ¶ 115.

Defendants moved to dismiss the complaint on several grounds, including that Michigan lacks antitrust and Article III standing and that Michigan failed to plausibly allege a conspiracy. Defs.' Br., Dkt. 31.  This Statement addresses one particular standing argument raised by Defendants—the application of the *Illinois Brick* rule.  *See* PageID.283-284.  This Statement also explains that the state-law claim for damages stemming from alleged climate-change-related harms is preempted by federal law under the U.S. Constitution.

## DISCUSSION

I.    **Count I: *Illinois Brick* bars much of Michigan's damages under Section 4 of the Clayton Act.**

To bring a parens patriae action under 15 U.S.C. §§ 15, 26, a state must demonstrate antitrust standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) (*AGC*).  *See, e.g.*, *Connecticut v. Sandoz, Inc.*,

4

No. 3:20-cv-802 (D. Conn. Feb. 12, 2026), Dkt. 1294, slip op. at 14-15; *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 151 (D.D.C. 2002); *Pennsylvania v. Milk Indus. Mgmt. Corp.*, 812 F. Supp. 500, 507 (E.D. Pa. 1992). Courts in the Sixth Circuit consider five factors in deciding whether a plaintiff has adequately pleaded antitrust standing under *AGC*: "(1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused; (2) the nature of the plaintiff's alleged injury . . . ; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 402 (6th Cir. 2012), *aff'd*, 572 U.S. 118 (2014).

The *Illinois Brick* rule implicates several of the *AGC* factors and holds that, typically, only direct purchasers can recover treble damages for overcharges resulting from an antitrust conspiracy under Section 4 of the Clayton Act, 15 U.S.C. § 15. *See Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019). The Court in *Illinois Brick* explained that allowing indirect purchasers to recover for "pass[ed]-on" overcharges "would create a serious risk of multiple liability for defendants" and give rise to practical problems estimating the passed-on amounts. 431 U.S. 720, 729-31 (1977).[1]

---

[1] The *Illinois Brick* rule does not, however, apply to Michigan's state-law antitrust claim because Michigan has enacted an *Illinois Brick* repealer statute that allows persons damaged "directly or indirectly" to bring treble damages claims. Mich. Comp. Laws Ann. § 445.778. Moreover, the *Illinois Brick* rule does not apply to Michigan's claim for injunctive relief under federal antitrust law. *See, e.g.*, *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 164 F.4th 529, 538 (6th Cir. 2026) (Bush, J, respecting the denial of rehearing en banc) (citing cases). Although the United States takes no position on whether Michigan has demonstrated antitrust standing for these claims, as explained below, such an artfully pleaded state-law claim here is preempted under federal law.

The *Illinois Brick* rule applies to parens patriae actions.  "The concept of parens patriae is derived from the English constitutional system," but "[t]he nature of the parens patriae suit has been greatly expanded in the United States beyond that which existed in England."  *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 257 (1972).  For federal antitrust purposes, Congress passed Section 4C of Clayton Act through the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 90 Stat. 1394, which authorizes "[a]ny attorney general of a State" to "bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State . . . to secure monetary relief as provided in this section for injury sustained by such natural persons to their property by reason of any violation of sections 1 to 7 of this title."  15 U.S.C. § 15c(a)(1).  Importantly, however, Section 4C allows states to bring parens patriae claims "only on behalf of resident natural persons," not nonresidents or companies.  *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 213, 216 (1990).  And while Section 4C "created a new procedural device" for states to sue "on behalf of their citizens to enforce existing rights of recovery under [Section] 4," it "did not alter the definition of which overcharged persons were injured within the meaning of [Section] 4," and thus could recover for passed-on overcharges.  *Ill. Brick*, 431 U.S. at 733 n.14.  Accordingly, as the Supreme Court explained in *UtiliCorp*, Section 4C does not authorize states to sue on behalf of indirect-purchaser consumers who would have no cause of action on their own under *Illinois Brick*.  497 U.S. at 218-19.

Under this principle, the State lacks standing to recover much of the damages it seeks under Section 4.  Michigan acknowledges that most of the fossil-fuel-based energy purchased by the State and its residents was not purchased directly from the Fossil Fuel Defendants.  Regarding the transportation energy market, Michigan alleges that "[o]nly 5% of gas stations in

6

the United States are owned or operated by companies with large oil refining operations, such as the Fossil Fuel Defendants.  Instead, the vast majority of branded gas stations are owned and operated by independent retailers, who are often licensees or franchisees of the oil refiners' brands.  These retailers purchase and resell gasoline from those brands to consumers."  Compl. ¶ 49.  Likewise, regarding the primary energy market, Michigan alleges that "[a]lmost all" homes and buildings owned or leased by the State get their electricity from a regional power grid.  Compl. ¶ 55.  Michigan alleges that renewable energy makes up approximately 10% of the energy supplied by the regional power grids.  *Id.*  Michigan further alleges that 85% of home heating in the State comes from fossil fuel energy sources, and buildings that rely on electricity for heat overwhelmingly get that electricity from the fossil-fuel-dominated grid.  *Id.*  But Michigan does not allege that the State or its residents purchase fossil fuels or grid electricity for residential or commercial heating and cooling directly from the Fossil Fuel Defendants.

To be sure, there is an exception to the *Illinois Brick* rule where the alleged antitrust violator owns or controls its direct purchasers.  *In re Auto. Parts Antitrust Litig.*, 997 F.3d 677, 683 (6th Cir. 2021).  There also is a possible exception when an overcharged indirect purchaser had a pre-existing cost-plus contract with the direct purchaser.  *See Ill. Brick*, 431 U.S. at 724 n.2, 736 (quoting *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 494 (1968)); *cf. UtiliCorp*, 497 U.S. 218 ("[A]lthough we do not alter our observations about the possibility of an exception for cost-plus contracts, we decline to create the general exception for utilities sought by the petitioners."); *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 164 F.4th 529, 532 n.2 (6th Cir. 2026) (Bush, J, respecting the denial of rehearing en banc) (quoting *Hanover Shoe*, 392 U.S. at 494).  And some circuits recognize an

exception where the plaintiffs purchased from direct-purchaser intermediaries who were coconspirators with the defendants. *See In re NFL Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1158 (9th Cir. 2019); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 542 (8th Cir. 2015); *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 378-79 (3d Cir. 2005); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 214-15 (4th Cir. 2002); *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 631-33 (7th Cir. 2002); *Lowell v. Am. Cyanamid Co.*, 177 F.3d 1228, 1231 (11th Cir. 1999). But Michigan has not pleaded facts that implicate any of these exceptions to *Illinois Brick*.

Finally, *Illinois Brick* is just one component of private antitrust standing. Even if a claim falls outside the *Illinois Brick* rule, it is possible it "might still not satisfy proximate causation under all the facts" and therefore be subject to dismissal. *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tennessee, Inc.*, 155 F.4th 795, 813-14 (6th Cir. 2025). But the United States takes no position on the application of the other standing requirements to the alleged facts.[2]

## II. Count II: Michigan's artfully pleaded state-law claim for climate-change damages is preempted.

Michigan Attorney General Dana Nessel has delivered on her promise "to pursue litigation related to the climate change impacts caused by the fossil fuel industry on behalf of the

---

[2] The Complaint also appears to present issues regarding First Amendment-protected petitioning activity that is immunized from antitrust liability under the *Noerr-Pennington* doctrine, including lobbying regarding federal and state legislation and EPA regulations. Compl. ¶ 218; *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965). This Statement does not address these First Amendment concerns because, accepting as true the allegations in the Complaint, Michigan alleges that "nothing in this Complaint should be construed as challenging any entities' petitioning efforts or any First Amendment-protected conduct." Compl. ¶ 26 n.6.

State of Michigan."  Amended Complaint ¶ 15, *United States v. Michigan*, No. 1:25-cv-00496 (W.D. Mich. July 11, 2025), Dkt. 8.  The Complaint—which mentions "climate" nearly 150 times—asserts that, through conspiracy and otherwise, global energy producers operating around the world violated state law by agreeing to reduce the production and distribution of renewable energy and instead continue to provide oil and gas to Michiganders.  Compl. ¶¶ 4, 10-16.  In other words, Michigan is attempting to impose liability for wholly out-of-state conduct related to global greenhouse gas emissions and regulate that conduct under state law.  The U.S. Constitution and the Clean Air Act prevent such attempts at artful pleading, though, since federal law exclusively governs interstate air emissions, including remedies for global climate change.

First, the Constitution precludes states from projecting their own regulatory actions into other jurisdictions.  State sovereignty is confined to its borders.  *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 14 (2025).  Generally, states may not regulate conduct beyond their borders. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 376 n.1 (2023).  "State[s] may not impose economic sanctions" against those it thinks violate state laws "with the intent of changing the . . . conduct in other States."  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996).  In sum, absent a direct and traceable connection between the conduct elsewhere in the world and in-state effects, states can regulate conduct only within their own state.  *Young v. Masci*, 289 U.S. 253, 259 (1933).

Here, Michigan cannot allege a direct and traceable connection between global greenhouse gas emissions and in-state effects.  Rather, Michigan is attempting to use state law to hold energy producers liable for a worldwide problem caused by indivisible greenhouse gas emissions—all because the problem has far downstream alleged effects in Michigan that are no

9

different from, and may indeed be dwarfed by, alleged effects in other states or other parts of the world.  The Constitution forbids state-law attempts to leverage in-state effects (e.g., alleged "climate related harms," Compl. ¶ 261) to justify directly regulating wholly out-of-state conduct (e.g., ceasing oil production).

Second, the Clean Air Act preempts attempts to impose state-law liability for greenhouse gas emissions originating in other states.  The Supremacy Clause states, "[t]his Constitution, and the Laws of the United States which shall be made . . . shall be the supreme Law of the Land . . . ."  U.S. Const. art. VI, cl. 2.  When a field of law is exclusively occupied by federal law, or when otherwise a state law conflicts with and becomes an obstacle to Congressional objectives underlying federal law, the state law is preempted by such federal laws under the Supremacy Clause.  *See City of Milwaukee v. Illinois*, 451 U.S. 304, 316-17 (1981) (field preemption); *Hillsborough County v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 713 (1985) (conflict preemption).  The Clean Air Act, 42 U.S.C. § 7401 *et seq.*, comprehensively governs and provides for the regulation of the Nation's air quality.  Specifically, "[t]he Clean Air Act is a comprehensive statutory scheme that anoints the EPA as the 'primary regulator of [domestic] greenhouse gas emissions.'"  *City of New York v. Chevron Corp.*, 993 F.3d 81, 99 (2d Cir. 2021) (alternation in original) (quoting *American Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 428 (2011) (hereinafter *AEP*)).

Michigan's request for damages under state law stemming from climate change impacts allegedly caused by Defendants' emissions of greenhouse gases is an improper attempt to use state law to regulate emissions.  "Artful pleading cannot transform the [plaintiff's] complaint into anything other than a suit over global greenhouse gas emissions."  *City of New York*, 993 F.3d at

10

91.  The U.S. Supreme Court has already made clear "that Congress delegated to EPA the decision whether and how to regulate carbon-dioxide emissions from powerplants." *AEP*, 564 U.S. at 426 (holding that the field of carbon dioxide and other greenhouse gas pollution regulation is "occupied" by the EPA and its implementing regulations under the Clean Air Act). And the Clean Air Act makes EPA the "primary regulator of greenhouse gas emissions." *Id*. at 428.  Thus, while states may use state regulatory agencies to adopt higher standards than EPA to regulate emissions within their borders by in-state actors, 42 U.S.C. §§ 7401(a)(3), 7416, the "Clean Air Act gives states a much more limited role in regulating pollution sources beyond their borders." *City of New York*, 993 F.3d at 88.

In this case, "the Clean Air Act does not authorize" Michigan to "recover damages for the harms caused by global greenhouse gas emissions . . . under [Michigan] law" or "effectively regulate" out-of-state emissions. *Id.* at 91-92, 99.  Given the inherently federal nature of the issue and the national concerns it implicates, the Clean Air Act must affirmatively "authorize" state regulation or state-imposed liability of interstate air pollution. *Id.* at 99.  It does not.  As with the artfully pleaded state-law claims in *City of New York*, the artfully pleaded state-law claim here "does not seek to take advantage of th[e] slim reservoir of state" authority under the Clean Air Act to regulate or impose liability in this area of interstate pollution. *Id*. at 100; *see also Minnesota v. Am. Petrol. Inst.*, 63 F.4th 703, 717-20 (8th Cir. 2023) (Stras, J., concurring) (explaining how artfully pleaded state-law claims to regulate global greenhouse gas emissions are "simply beyond the limits of state law" (quoting *City of New York*, 993 F.3d at 92)). Accordingly, Michigan's request for damages stemming from climate-related harms under state antitrust law is preempted under the Clean Air Act.

**CONCLUSION**

Under *Illinois Brick*, Michigan lacks standing to sue for treble damages under federal antitrust law for most of its alleged overcharges.  Under the Constitution and Clean Air Act, Michigan is precluded from seeking state-law antitrust damages for climate-related harms.

Dated: June 29, 2026                                    Respectfully submitted,

                                                          /s/ Avi Grunfeld

ADAM R.F. GUSTAFSON                    STANLEY E. WOODWARD, JR.
*Acting Assistant Attorney General*      *United States Associate Attorney General*

ROBERT N. STANDER                        JOHN K. ADAMS
*Deputy Assistant Attorney General*      *Deputy Associate Attorney General*

ANDREW M. DARLINGTON                 G. CHARLES BELLER
*Counsel*                                             DINA KALLAY
                                                          *Deputy Assistant Attorneys General*

U.S. Department of Justice                   DANIEL E. HAAR
Environment and Natural Resources Division    NICKOLAI G. LEVIN
950 Pennsylvania Avenue, NW            AVI GRUNFELD
Washington, DC 20530                        *Attorneys*
Telephone: (202) 532-3365
E-mail: andrew.darlington2@usdoj.gov     U.S. Department of Justice
                                                          Antitrust Division
                                                          950 Pennsylvania Avenue, NW
                                                          Washington, DC 20530
                                                          Telephone: (202) 765-4799
                                                          E-mail: avi.grunfeld@usdoj.gov

                                                          *Attorneys for the United States of America*

**CERTIFICATE OF COMPLIANCE**

This Statement complies with the word limit of Local Civil Rule 7.2(b), because it contains 3,476 words, excluding the portions of the Statement exempted from the word count under Local Civil Rule 7.2(b)(i).  The word count was generated using Microsoft Word for Microsoft 365 Version 2603.